NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0002n.06

No. 19-2431

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JONES ONWENU,                                    )
                                                 )
        Plaintiff-Appellant,                     )
                                                 )
v.                                               )    ON APPEAL FROM THE
                                                 )    UNITED STATES DISTRICT
JOSEPH BACIGAL, individually; WEST               )    COURT FOR THE EASTERN
BLOOMFIELD TOWNSHIP, a municipal                 )    DISTRICT OF MICHIGAN
corporation,                                     )
                                                 )
        Defendants-Appellees.                    )

**FILED**
Jan 04, 2021
DEBORAH S. HUNT, Clerk

**BEFORE:  MERRITT, KETHLEDGE, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.**  Plaintiff-Appellant Jones Onwenu was arrested by West Bloomfield Township police officer Joseph Bacigal on suspicion of drunk driving.  After a blood-alcohol test showed that he had no alcohol in his system at the time of his arrest, Onwenu brought this action against Bacigal and West Bloomfield Township, alleging false arrest, unreasonable search and seizure, excessive force, filing a false report with the Michigan Secretary of State, retaliation, and municipal liability for the arresting officer's actions.  The district court granted summary judgment to Defendants on all claims, finding that the arresting officer's mistake was reasonable under the circumstances and that Onwenu had failed to establish a basis for municipal liability.  For the reasons that follow, we **VACATE** the district court's judgment with respect to Onwenu's excessive force and retaliation claims, and **REMAND** for proceedings consistent with this opinion.  We **AFFIRM** as to Onwenu's other claims.

**I.**

A few minutes before 3:00 A.M. on March 27, 2016, Officer Bacigal observed a blue sedan come to a complete stop at a yellow blinking traffic light at the intersection of Drake Road and Walnut Lake Road in West Bloomfield Township, Michigan. Bacigal, who had been traveling north on Drake Road, turned right and pulled behind the sedan, which was being driven east on Walnut Lake Road by Onwenu. The parties dispute whether Onwenu was driving below the speed limit, but both agree that as Bacigal followed, Onwenu pulled into the flare lane on the south side of the road, slowed his vehicle, and then resumed his speed and merged back onto the main road. Bacigal suspected Onwenu was driving under the influence of alcohol and initiated a traffic stop.

Audio and video of the traffic stop was captured on Bacigal's dashboard camera (hereafter "dash-cam"). *See* R. 11-4 (Bacigal Stream 1).[1] Bacigal began the stop by requesting Onwenu's license and registration and asking Onwenu where he was coming from. Onwenu responded that he was at his brother's house "having a family discussion." *Id.* at 01:49-01:55.[2]

Bacigal told Onwenu that he initiated the traffic stop because Onwenu was driving "really slow" and "swerved to the right and then back over" before again going "back over to the right." *Id.* at 02:22-30. Onwenu responded that the reason he pulled into the flare lane was because he saw Bacigal and thought Bacigal wanted to pass him.

Bacigal then asked Onwenu if he was drinking at his brother's house. Onwenu, still searching his vehicle for his license and registration, responded "no, I said we were having a family discussion." *Id.* at 03:03-07. Bacigal rephrased, asking this time in the negative, "you didn't drink

---

[1] Time references refer to the play time of the video, not the time displayed in the header of the dash-cam video.

[2] A transcript of the first 27 minutes of the dash-cam and in-car audio was prepared by Defendants. Onwenu disputes the accuracy of the transcript, so we do not quote from it here. *See* Appellant's Br. at 18. Instead, the court relies on the video itself.

at all?" Onwenu repeated that there was a family discussion. *Id.* at 03:06-13. Bacigal asked a third time, again rephrasing slightly, "but did you drink at all?" This time, Onwenu responded, "did I drink? I had a drink at nine o'clock, that was three hours ago." *Id.* at 03:15-23. Onwenu was mistaken: it had, in fact, been nearly six hours since nine o'clock.

Bacigal then asked Onwenu if he was drunk. Onwenu said that he was not and told Bacigal to watch him drive to the next intersection to prove that he was not intoxicated. Bacigal, in a lowered voice, responded "okay, alright," and turned slightly toward his patrol vehicle with Onwenu's license. *Id.* at 03:39-45. Onwenu, believing that Bacigal had agreed to his proposal, put his car into drive and drove forward a few inches. Bacigal yelled for Onwenu to stop, and Onwenu complied. Bacigal asked Onwenu why he started driving, and Onwenu responded "I thought you said go." *Id.* at 03:45-49. Bacigal reminded Onwenu that Bacigal still had Onwenu's driver's license and told Onwenu to turn his car off. At or around this time, Bacigal called for backup, and two additional officers responded.

Bacigal then told Onwenu to exit the car so that he could administer field sobriety tests. Onwenu exited his vehicle and stood with his back to his rear bumper. Onwenu told Bacigal that he had previously suffered a stroke and that his left leg "was not good." *Id.* at 04:19. Bacigal assured Onwenu that he would not make him perform any walking tests. The two continued to talk for approximately a minute, with each talking over the other as they tried to tell their respective sides of the story of how they got to the traffic stop. During that minute, Onwenu twice more told Bacigal about his injured left leg and repeated other things he had previously said.

Bacigal then asked Onwenu to keep his head still and follow Bacigal's finger with his eyes, a test known as a "horizontal nystagmus" test.[3] During the test, Onwenu can be seen moving his head slightly, and Bacigal tells Onwenu to try to keep his head still. Onwenu, who was facing Bacigal's patrol car, told Bacigal that he was having difficulty because the patrol car's lights were shining in his eyes. Bacigal concluded that Onwenu had failed the nystagmus test.

Bacigal next attempted to administer a preliminary breathalyzer test. Bacigal instructed Onwenu to blow into the breathalyzer like he was "blowing up a balloon." *Id.* at 08:07-10. Onwenu failed to blow enough air into the breathalyzer to activate the device. Onwenu stated that he had a problem with his "heartbeat," as well as diabetes, and took multiple medications. Bacigal then asked Onwenu if he was capable of blowing a long, slow breath and demonstrated what such a breath would look like. Onwenu again described his medical conditions but indicated that he believed he was capable of producing a long breath, and blew a breath into the air to demonstrate. Onwenu twice more blew into the breathalyzer, but twice failed to blow enough air to activate the device. Bacigal told Onwenu he was incorrectly putting his lips in front of the breathalyzer tube, instead of around the breathalyzer tube, and was not blowing hard enough. Onwenu continued to try, but after the eighth failed attempt, Bacigal concluded that Onwenu was purposefully failing to blow enough air into the breathalyzer to register a reading, and placed Onwenu under arrest.

Bacigal handcuffed Onwenu behind Onwenu's back and escorted him to the back of his patrol car. As he was getting in, Onwenu asked Bacigal if he could move the seat to accommodate his injured left leg, but the officers informed him that the seats in the patrol car were fixed and could not be moved. Onwenu sat sideways in the back of the patrol car, leaning to his left side

---

[3] "Nystagmus" describes fast, uncontrollable movements of the eyes, which can be caused by excessive alcohol. *Bailey v. City of Howell*, 643 F. App'x 589, 592 n.2 (6th Cir. 2016).

and resting on his left elbow because he was unable to flex his left knee. Then Onwenu began yelling. Bacigal asked why he was yelling, and Onwenu said that the handcuffs were too tight. Bacigal responded, "I can check that," and climbed into the back seat to look at the handcuffs. R. 11-4 (Bacigal Stream 2 at 00:07-01:06). After visually inspecting the handcuffs, but not loosening them, Bacigal drove Onwenu to the West Bloomfield Police Station. Onwenu continued to yell for the duration of the two-minute drive.

Upon arrival at the police station, Onwenu said that he believed he may be having a heart attack. A medic examined him and determined that he was not having a heart attack. Bacigal uncuffed Onwenu and again attempted to perform a breath test using a different type of machine, but Onwenu again failed to blow enough air to obtain a valid sample. Bacigal, believing that Onwenu was purposefully faking his attempts to blow air into the machine, drafted a search warrant affidavit to obtain a blood sample. The search warrant affidavit stated:

> Affiant observed the said described person driving in the following manner: I was N/B on Drake Rd stopped for the traffic signal, which was blinking red for Drake, when I observed Onwenu driving at a very slow rate of speed. Onwenu was driving E/B on Walnut Lake Rd West of Drake in a vehicle bearing MI license plate number DAS2018. Onwenu then stopped at the intersection, which was blinking yellow for Walnut Lake Rd. I let Onwenu proceed through the intersection and turned behind him. As I turned Onwenu changed lanes into the flare lane and stopped. I stopped my vehicle and Onwenu began to drive once again, merging back into the lane of traffic. Onwenu continued to drive approximately 15-20 mph under the speed limit. I continued to follow him and he once again merged into the flare lane and stopped. I then initiated a traffic stop at Walnut Lake and Beauchamp Place Dr. When I initiated the traffic stop, Onwenu pulled far to the right, almost completely off the shoulder of the road and over a grass berm.

> Said described person had an odor of intoxicants emanating from his breath.

> Affiant personally observed the said described person to have [sic] As I spoke with Onwenu, his eyes were glassy and speech was slurred. Onwenu stated that he had been drinking earlier that night, but had not drank in several hours. Onwenu repeatedly asked why he was stopped and seemed to forget my answers. Onwenu attempted to leave the traffic stop after giving me his license, because he thought

the traffic stop was over. Onwenu was argumentative, repetitive, and belligerent when trying to speak with him.

Affiant personally observed said described person perform sobriety tasks with the following results:

a. One Leg Stand: I was unable to perform this test due to a knee injury.
b. Heel/Toe Walk: I was unable to perform this test due to a knee injury.
c. Horizontal Gaze Nystagmus: I explained the test to Onwenu, and he stated that he understood. I had to remind him several times to not move his head during the test. I also observed the onset of nystagmus at 45 degrees with distinct and sustained nystagmus at maximum deviation.
d. Alphabet: I was unable to perform this test due Onwenu's demeanor and state.
e. Counting: I was unable to perform this test due Onwenu's demeanor and state.

Said described person's preliminary breath test results: Refused.

R. 15-2, PID. 225–26. Bacigal also submitted a "Motorist Implied Consent Refusal" form to the Michigan Secretary of State documenting Onwenu's "refusal" to submit to a breath test and confiscated Onwenu's driver's license.

While Bacigal was drafting the affidavit, other officers continued to try to obtain a breath sample from Onwenu. Onwenu told the officers that he "ha[d] a medical issue that will not allow him to blow out with much force or be able to blow for an extended period of time." R. 11-3, PID. 113. In response, the officer administering the test "requested that [Onwenu] take a deep breath and exhale onto [his] hand in order to gauge the volume of air he was able to move." *Id.* That officer, satisfied Onwenu was capable of blowing enough air into the machine, again attempted to obtain a sample from Onwenu. Onwenu again failed to blow enough air into the machine to obtain a reading. Bacigal eventually obtained a search warrant for Onwenu's blood from a magistrate judge and two vials of blood were drawn from Onwenu at a nearby hospital. Onwenu was returned to the police station and released a few hours later. He sought treatment for an injury to his wrist upon release.

About a week later, Onwenu's blood test results came back negative for alcohol and narcotics. The drunk-driving charges against Onwenu were dropped, but Onwenu's driver's

license remained suspended because of the "Motorist Implied Consent Refusal" form Bacigal had sent to the Michigan Secretary of State.

Three months after the arrest, Onwenu was asked by an attorney for West Bloomfield Township to sign a release of liability for all claims Onwenu may have arising from his March 27, 2016 arrest. As consideration for Onwenu's waiver, the Township offered "not to pursue any criminal or civil charges against [Onwenu] arising out of this incident and stipulates to the [w]ithdrawal of the Motorist's Implied Consent Refusal." R. 15-6, PID. 239. Onwenu did not sign the waiver.

On June 22, 2016, Bacigal wrote Onwenu a citation for violation of basic speed law, improper lane use, disobeying a traffic signal, and impeding traffic. Bacigal's notes state that he wrote the citation "at the request of Township Prosecuting Attorney Sherman." R. 11-3, PID. 115. Onwenu spent more than a year trying to reinstate his suspended driver's license.

Onwenu brought this 42 U.S.C. § 1983 action, alleging claims for false arrest, excessive force, unreasonable search and seizure, filing of a false report with the Michigan Secretary of State,[4] retaliation, and municipal liability for Bacigal's actions. The district court granted summary judgment in favor of Defendants on all claims, finding that Bacigal was entitled to qualified immunity and that Onwenu had failed to support a claim for municipal liability against West Bloomfield Township. Onwenu timely appealed.

---

[4] Onwenu stated in a section header that the district court erred in granting summary judgment to Defendants on this claim. *See* Appellant's Br. at 58. This appears to have been an error, as the content of the section discussed Onwenu's excessive-force claim, not the information sent to the Michigan Secretary of State. Since Onwenu provided no argument for this claim in his brief, the court deems it waived on appeal.

## II.

We review de novo a district court's order granting summary judgment. *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009). Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Peffer v. Stephens*, 880 F.3d 256, 262 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding a motion for summary judgment, the court must view all the facts and the inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But where, as here, there is "a videotape capturing the events in question," the court must "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

## III.

"To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or laws of the United States." *Waters v. City of Morristown*, 242 F.3d 353, 358–59 (6th Cir. 2001).

Bacigal contends that he is entitled to qualified immunity on each of Onwenu's claims. Qualified immunity shields government officials acting within the scope of their official duties from civil liability insofar as their conduct does not violate clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982). To overcome Bacigal's qualified immunity defense, Onwenu must demonstrate that "the officer's conduct violated" the Constitution and that "clearly established" law at the time would have showed as much. *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001).

8

**A.**

Onwenu alleges that Bacigal arrested him without probable cause in violation of the Fourth Amendment. Bacigal argues that he is entitled to qualified immunity because, though Onwenu was later determined to be sober, he reasonably suspected Onwenu to have been driving under the influence of alcohol when he arrested him.

"An officer has probable cause when 'the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed.'" *Miller v. Sanilac Cnty.*, 606 F.3d 240, 248 (6th Cir. 2010) (quoting *Henry v. United States*, 361 U.S. 98, 102 (1959)). Probable cause determinations are typically a jury question, but under § 1983, an officer is entitled to qualified immunity "if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008). In assessing whether an officer is entitled to qualified immunity, the court looks to the totality of the circumstances, only considering the information known to the arresting officer at the time of the arrest. *Id.*

Here, there is no dispute that Bacigal was wrong about Onwenu's sobriety. As the district court observed, Onwenu's arrest appears to have been the product of Onwenu's unusual caution (in stopping at a flashing yellow light), courtesy (in pulling into the flare lane to allow Bacigal to pass), medical condition (inability to blow into the breathalyzer) and understandable agitation at being pulled over and investigated for a drunk-driving offense he knew he did not commit. The qualified immunity analysis does not allow for the benefit of hindsight, however, and when assessing the reasonableness of Bacigal's probable-cause determination the court is limited to the facts known to Bacigal at the time he made the arrest. Those facts are:

- Onwenu came to a complete stop at a flashing yellow traffic light, in violation of Mich. Comp. Laws. § 257.614(1)(b), and then pulled into a flare lane,[5] slowed down, and accelerated again before merging back onto the main road;

- Onwenu twice denied drinking alcohol before admitting—after the third time he was asked the question—that he had had a glass of wine at his brother's house earlier in the evening;

- Onwenu incorrectly stated that he had had the glass of wine "three hours ago" at "nine o'clock" when, in fact, six hours had elapsed since 9:00 P.M.;

- Though there appears to have been a miscommunication between Onwenu and Bacigal as to whether Bacigal had accepted Onwenu's proposal to have Bacigal follow Onwenu to the next intersection to assess Onwenu's sobriety, Bacigal believed that Onwenu attempted to drive away mid-stop without his driver's license;

- The video shows that Onwenu repeated himself a number of times and was generally argumentative;

- Onwenu failed to blow enough air into the breathalyzer to obtain a reading on eight occasions, despite appearing to Bacigal to have demonstrated the physical capacity to do so, leading Bacigal to believe Onwenu was faking his attempts to blow into the breathalyzer.

The district court concluded that these facts provided Bacigal with a reasonable (though ultimately erroneous) belief that Onwenu was intoxicated at the time of his arrest. The district court also discounted certain facts cited by Bacigal that a jury could find unbelievable. For example, Bacigal stated that Onwenu's eyes were "glassy and [his] speech was slurred" and that he smelled of intoxicants. R. 15-2, PID. 226. Given Onwenu's negative blood-alcohol test, there is reason to doubt the veracity of these statements. *See Miller*, 606 F.3d at 248 (subsequent 0.00% blood-alcohol test "casts doubt" on officer's claim that arrestee smelled of alcohol and failed field sobriety tests). The district court also did not factor in Bacigal's claim that Onwenu was driving 15-20 mph under the speed limit, which Onwenu contests, or the failed horizontal nystagmus test,

---

[5] The district court stated that Onwenu twice pulled into the flare lane before being pulled over by Bacigal. Onwenu says that he only turned into the flare lane once. Appellant's Br. at 55. This court has reviewed the dash-cam video and finds only one of these maneuvers clearly depicted on the video, although there is a second, slight movement to the right.

which Onwenu claims to have failed because he was forced to look into Bacigal's headlights during the test.

Onwenu argues that the district court erred when it failed to consider certain mitigating facts and statements made by Onwenu in its probable cause analysis. First, Onwenu contends that his admission that he had consumed alcohol earlier in the evening is irrelevant because "there is no difference in a statement that the person has had nothing to drink and a statement that the person had one glass of wine six hours ago." Appellant's Br. at 37. Second, Onwenu asserts that he did not actually deny drinking alcohol twice before answering in the affirmative, but instead absentmindedly answered "no" while searching his car for his license and registration. *Id.* at 40. Third, Onwenu argues that it was unreasonable for Bacigal to assume that his misstatement about the time he had a glass of wine (three hours versus six hours prior to the stop) was evidence of intoxication and not evidence of Onwenu's stroke or old age. *Id.* at 41. Fourth, Onwenu asserts that he did not attempt to drive off from the traffic stop without permission, as he reasonably believed that Bacigal had agreed to allow him to drive to the next intersection. *Id.* Fifth, Onwenu contends that he was not argumentative at the traffic stop. *Id.* at 44–47. Sixth, Onwenu contends that because his failure to provide a breath sample was due to his underlying medical conditions, it was unreasonable for Bacigal to conclude that Onwenu was purposefully failing to activate the breathalyzer. *Id.* at 50–54.

Though each of Onwenu's alternative explanations for his behavior at the traffic stop is plausible when viewed with the benefit of hindsight, his arguments ultimately miss the mark. The court must assess Bacigal's probable-cause determination based on the information Bacigal had at the time of the arrest, not what he would subsequently come to find out. *Bornhorst*, 513 F.3d at 511; *United States v. Wright*, 16 F.3d 1429, 1438 (6th Cir. 1994) ("[o]ften, innocent behavior will

form the grounds for probable cause"). For example, Bacigal did not know at the time he arrested Onwenu that Onwenu had a medical condition that prevented him from blowing sufficient air into the breathalyzer to register a reading. To the contrary: Onwenu had mentioned his diabetes and irregular heartbeat, but Onwenu indicated to Bacigal that he believed he *was* capable of blowing a sufficiently forceful breath to activate the breathalyzer. Onwenu did not make clear that his medical conditions prevented him from "blow[ing] out with much force or . . . for an extended period of time" until after he arrived at the police station post-arrest. R. 11-3, PID. 113. It was reasonable under these circumstances for Bacigal to interpret Onwenu's failure to blow into the breathalyzer on eight occasions as an attempt to evade the test. *See Birchfield v. North Dakota*, 136 S. Ct. 2160, 2185 (2016) ("A breath test may also be ineffective if an arrestee deliberately attempts to prevent an accurate reading by failing to blow into the tube for the requisite length of time or with the necessary force. . . . [C]ourts have held that such conduct qualifies as a refusal to undergo testing . . . and it may be prosecuted as such.") (internal citations omitted).

With respect to Onwenu's remaining arguments, we have reviewed the dash-cam video and must evaluate Onwenu's arguments in light of the events as depicted in the video. *Harris*, 550 U.S. at 378–81. In the video, Onwenu was driving unusually at nearly 3:00 A.M. He was argumentative. He repeated himself on numerous occasions, including that he had a "bad leg" eight times. He failed to acknowledge that he drank alcohol earlier that night until the third time he was directly asked the question. He misstated how long it had been since he had drunk alcohol by three hours. Then he failed to activate the breathalyzer on eight consecutive attempts despite appearing physically capable of doing so. Even putting aside Onwenu's alleged attempt to leave the traffic stop—which in the video appears to be the result of a miscommunication Bacigal should

have perceived—the district court did not err in concluding that, when viewing the totality of circumstances, Bacigal had a reasonable belief that his arrest of Onwenu was lawful.

**B.**

Onwenu alleges that Bacigal made false statements in the search-warrant affidavit submitted to obtain Onwenu's blood, rendering the subsequent seizure of his blood unlawful.

To prevail on this claim, Onwenu must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit[.]" *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). If Onwenu can establish "perjury or reckless disregard" by a preponderance of the evidence, "the affidavit's false material [must be] set to one side" and the "remaining content" must be reviewed to determine whether it is sufficient to establish probable cause. *Id.* at 156. Only if the remaining content would have been insufficient to establish probable cause can an officer asserting qualified immunity be held liable under § 1983. *Vakilian v. Shaw*, 335 F.3d 509, 517–18 (6th Cir. 2003).

Here, Onwenu contends that Bacigal's affidavit falsely stated that Onwenu's "eyes were glassy and speech was slurred," that he smelled of intoxicants, that he "admitted drinking," that he stopped at a flashing yellow light, that he twice entered the flare lane, that he drove 15-20 mph below the speed limit, that he attempted to flee the traffic stop, was forgetful, repetitive, and argumentative, and that he refused to take a breathalyzer test. Appellant's Br. at 54–57. The district court concluded that, even putting aside the allegedly false statements, the search warrant affidavit established probable cause to believe Onwenu had committed a drinking and driving offense.

Onwenu's arguments are again unavailing. With respect to his stop at the flashing traffic light, Onwenu explains in his brief that the reason he stopped at the flashing yellow light was

13

because he wanted to avoid interacting with the police. Appellant's Br. at 55. Onwenu's explanation for stopping at the traffic light may be eminently reasonable, but it does not negate that he came to a complete stop at a flashing yellow traffic light. In the dash-cam video, Onwenu can be seen pulling into the flare lane and slowing down before resuming his speed and merging back onto the main road. After Bacigal turns on his lights, Onwenu pulls relatively far off the road, and one of his tires goes up a grass berm. Onwenu then unambiguously admits to drinking alcohol earlier in the evening. He repeats that he has a "bad leg" eight times. He is argumentative, talking over Bacigal on numerous occasions. These statements in the affidavit were not false.

In its probable cause analysis for the search warrant, the district court properly put aside— given Onwenu's subsequent negative blood-alcohol test—Bacigal's assertions that Onwenu smelled of intoxicants, slurred his words, and had glassy eyes. We do the same. Additionally, Bacigal's affidavit should have stated that Onwenu pulled into the flare lane once, not twice, and been clear that Bacigal believed Onwenu was refusing to take the breathalyzer test because of Onwenu's repeated failure to blow a sample despite his seeming capability—not because of an explicit refusal by Onwenu. We substitute that omitted information. *See Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) ("If the affidavit contains false statements or material omissions, we set aside the statements and include the information omitted in order to determine whether the affidavit is still sufficient to establish probable cause."). Finally, we put aside the statement that Onwenu was driving under the speed limit, which Onwenu contests and we must assume is false for purposes of ruling on a summary judgment motion. Even so, we conclude that the remaining information in the search warrant affidavit was sufficient for an objective, neutral judge to have found probable cause to draw Onwenu's blood for blood-alcohol testing. Thus, the district court did not err in finding that Bacigal is entitled to qualified immunity on this claim.

**C.**

The complaint alleges that Bacigal "placed Onwenu in handcuffs in a manner that was unnecessarily and unreasonably tight" and "seated [Onwenu] in the patrol vehicle in a manner causing foreseeable wrist injury[.]" R. 1, PID. 3 (Compl. ¶¶ 14, 16). Onwenu further alleges that despite his complaints, Bacigal "refused to loosen said handcuffs or to re-cuff plaintiff in the front." *Id.* ¶ 16.[6]

The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure. *Morrison v. Bd. of Tr. of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009). In order for a handcuffing claim to survive summary judgment, a plaintiff must offer evidence to create a genuine issue of material fact that "(1) he or she complained [that] the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced some physical injury resulting from the handcuffing." *Id.* (internal quotation marks omitted).

The district court determined that Bacigal was entitled to summary judgment on Onwenu's excessive-force claim. In its analysis, the district court found that Onwenu established that he complained about the tightness of his handcuffs, and assumed that he suffered a physical injury for purposes of the third prong, but found that Onwenu could not establish a triable issue of fact regarding whether Bacigal ignored his complaints. We disagree.

In *Baynes v. Cleland*, we held that an arrestee may prove the second prong of an excessively forceful handcuffing claim even if an officer responds to the arrestee's complaints if that response "was essentially non-responsive." 799 F.3d 600, 609 (6th Cir. 2015). In *Baynes*, after the plaintiff

---

[6] Onwenu also argues for the first time on appeal that his wrist injury occurred when Bacigal "roughly forced" him into the patrol car. Appellant's Br. at 63. Onwenu did not make this claim below and this court does not consider claims raised for the first time on appeal. *Miles v. S. Cent. Human Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020).

complained about the tightness of his handcuffs, the arresting officers, who testified that they checked the tightness of the handcuffs when they put them on, told the plaintiff that "the handcuffs were not too tight, and if they were loosened, [plaintiff] may be able to get out." *Id.* We held that "to conclude that the deputy was responding to [p]laintiff's complaints, [t]he jury would have to believe that the handcuffs in fact were not too tight," and that such a determination would require a credibility judgment that would be inappropriate for a court to make on summary judgment. *Id.* (internal quotation marks omitted). *See also Morrison*, 583 F.3d at 402 (finding issue of material fact as to second prong of plaintiff's excessive-force claim where the officer "claimed he responded to the complaint by sticking his finger in between the handcuffs and [plaintiff's] skin to make sure [the handcuffs] were not 'too tight'" and then said "he could place the handcuffs on 'as tight as he wanted to and that's how they were staying'").

Here, it is undisputed that Bacigal provided at least some response to Onwenu's complaints about the tightness of his handcuffs. Bacigal can be seen on video crawling into the back of the patrol car and observing the handcuffs with his flashlight. But what cannot be seen on the video is whether or not the handcuffs were excessively tight when Bacigal declined to readjust them. Onwenu says they were too tight; Bacigal says they were not. And, Onwenu continued yelling during the ride and, in fact, was diagnosed with a broken wrist bone. As we held in *Morrison* and made clear in *Baynes*, such credibility determinations are the province of the jury—not the district court. *See Baynes*, 799 F.3d at 609. Were the jury to credit Onwenu's testimony, the jury could find that Bacigal's response to Onwenu's complaints was essentially non-responsive. Therefore, Onwenu has established a question of material fact as to the second prong of the analysis.[7]

---

[7] Our dissenting colleague suggests that Bacigal is not liable if Onwenu's audible complaining, coupled with the darkness of the night, caused Bacigal to misjudge the tightness of the handcuffs. This is correct; qualified immunity generally protects officers from liability for innocent mistakes. But whether Bacigal made an earnest

Because we find that Onwenu established an issue of fact as to the second prong, we briefly discuss the third prong, which the district court assumed, without deciding, was satisfied. Onwenu provided evidence that he sought treatment for bruising and wrist pain the day after the arrest, and two days after the arrest Onwenu was diagnosed with a "[c]losed nondisplaced fracture of lunate of right wrist." R. 15-8, PID. 245–46. Bacigal argued below that Onwenu could not establish a sufficient injury because Onwenu saw another doctor approximately a month later, on April 25, 2016, who did not see evidence of a fracture. Onwenu argues that the third doctor's findings do not call the initial diagnosis into question because the first doctor told Onwenu to expect his fracture to heal in approximately four weeks, and Onwenu saw the third doctor approximately four weeks later. Appellant's Br. at 63–64. On summary judgment, we must view the facts in the light most favorable to Onwenu, and under our precedents, a fractured wrist would be a sufficiently serious physical injury to satisfy the third prong of the test. *See Morrison*, 583 F.3d at 402 (finding plaintiff's alleged "bruising, skin marks, and attendant pain" to be a sufficiently serious injury to satisfy third prong); *Baynes*, 799 F.3d at 609 (plaintiff satisfied third prong with diagnosis of "bilateral radial sensory neuropathy from handcuffs"); *Martin v. Heideman*, 106 F.3d 1308, 1310, 1312–13 (6th Cir. 1997) (plaintiff's numbness and swelling during the ride to jail and wait in a holding cell satisfied third prong). Accordingly, Onwenu has established a question of material fact as to whether he suffered a physical injury due to the handcuffing.

Finally, because a reasonable jury could find that Bacigal used excessive force in handcuffing Onwenu, we address the "clearly established" prong of the qualified immunity

---

misjudgment here, as opposed to a decision to merely go through the motions of checking the tightness of the handcuffs, is a fact question appropriately left for the jury. *Sova v. City of Mount Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998) ("Where . . . the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability.").

inquiry, an issue not reached by the district court. This Circuit has consistently held that the Fourth Amendment prohibits unduly tight or excessively forceful handcuffing in the course of an arrest. *See, e.g.*, *Baynes*, 799 F.3d at 610; *Morrison*, 583 F.3d at 401; *Martin*, 106 F.3d at 1313. For purposes of qualified immunity, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. In *Baynes*, we clarified that under this Circuit's precedents, "the right to be free from excessively forceful or unduly tight handcuffing under the Fourth Amendment is clearly established law, no more specificity in defining this right is required." *Baynes*, 799 F.3d at 616.

Under *Baynes*, a binding published decision, Bacigal is not entitled to qualified immunity as a matter of law. Like the plaintiff in *Baynes*, Onwenu was cooperative with Bacigal and did not attempt to flee. Though Onwenu complained, he did not offer any resistance to Bacigal's attempts to handcuff him. Bacigal was therefore on notice that he could not ignore Onwenu's complaints about the tightness of his handcuffs. *See Baynes*, 799 F.3d at 616. Bacigal argued below that this case is more like *Getz v. Swoap*, a post-*Baynes* case where we found that an officer was entitled to qualified immunity for not removing the handcuffs of an arrestee who "attempted to flee, resisted arrest, belligerently continued to disobey orders after his arrest, and continued to address [the arresting officer] with abusive language." 833 F.3d 646, 655 (6th Cir. 2016). We find any comparison between Onwenu and the description of the arrestee in *Getz* belied by the video here. Though Onwenu had difficulty with the nystagmus test and the breathalyzer for the reasons described above, there is simply no evidence in the record that Onwenu was noncompliant or

resisted arrest. Indeed, in the video Bacigal himself can be heard telling another officer that Onwenu is "not a threat, he's just upset." R. 11-4 (Bacigal Stream 2 at 03:48-51). Under this Circuit's precedents, Bacigal is not entitled to summary judgment on his qualified immunity defense to Onwenu's excessive-force claim.

**D.**

On appeal, Onwenu challenges the district court's determination that West Bloomfield Township cannot be held liable for allegedly failing to train its officers that certain arrestees may have medical issues that affect their ability to blow into a breathalyzer. Appellant's Br. at 10.

It is well established that governmental entities cannot be held vicariously liable under 42 U.S.C. § 1983 for the acts of their employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978). *Monell* requires that a plaintiff show that the municipality itself had an unconstitutional policy, custom, or practice that was the proximate cause of his injuries. *See id.* at 694. Here, Onwenu contends that West Bloomfield Township's arrest policy caused his injuries because it failed to adequately train Bacigal that arrestees may have health issues that prevent them from blowing sufficient air into a breathalyzer to produce a reading.[8] Appellant's Br. at 10. In order to prevail on such a claim, Onwenu "must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *See Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). Deliberate indifference is a stringent standard, "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011)

---

[8] Onwenu's complaint also alleged *Monell* claims for retaliation and excessive force. Onwenu's retaliation claim is discussed in the next section. Onwenu's excessive force *Monell* claim was not litigated below and is not challenged on appeal, so the court does not discuss it here.

(quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (internal quotation marks omitted). The only exception to this rule is when, given the frequency and likelihood of a certain situation occurring, "the unconstitutional consequences of failing to train [are] so patently obvious" that a city can be said to be deliberately indifferent to violations of constitutional rights even without proof of a pre-existing pattern of violations. *Id.* at 64.

The district court did not err in granting West Bloomfield Township summary judgment on Onwenu's claim that the Township was liable under *Monell* for failing to train its officers about arrestees who may be medically unable to blow into a breathalyzer. Although the West Bloomfield Police arrest policy does not address arrestees unable to blow into a breathalyzer, Onwenu failed to provide any evidence that West Bloomfield Township was aware of any prior instances where arrestees were unable to activate a breathalyzer because of an underlying medical issue. And Onwenu has failed to establish that this is the rare case where the failure to train is "so patently obvious" that deliberate indifference can be established by a single constitutional violation. *See Connick*, 563 U.S. at 64. Accordingly, the district court did not err in granting West Bloomfield Township summary judgment on Onwenu's *Monell* claim for failing to train its officers about arrestees who may be medically unable to blow into a breathalyzer.

**E.**

Onwenu argues that the district court erred when it entered judgment for Bacigal and West Bloomfield Township, since neither defendant sought summary judgment on Onwenu's retaliation claims and the district court did not address the claims in its order granting summary judgment. Appellant's Br. at 64. Bacigal argues that Onwenu waived his retaliation claims because "[i]t is

entirely unclear from Onwenu's complaint that he alleges a claim of retaliation." Appellee's Br. at 35.

We agree that the district court erred in entering judgment in favor of Bacigal and West Bloomfield Township, without discussion or an invitation to present argument, on a claim they never sought to dismiss. In the complaint, Onwenu alleges:

> That as a result of Onwenu's refusal to execute said release and waiver of rights, defendants Bacigal and West Bloomfield Township, retaliated against Onwenu, almost 3 months later by issuing Motor Vehicle Code civil infractions and refusing to withdraw the Motorist's Implied Consent Refusal resulting in a one year unlawful suspension of driving privileges.

R. 1, PID. 4 (Compl. ¶ 19). Later, Onwenu alleges:

> That defendant Charter Township of West Bloomfield, has an established policy, practice or custom of retaliation of issuing civil infractions against citizens, arrested for alcohol related offenses whose chemical tests results ultimately show negative, who refuse to release defendant municipality from liability for violations of clearly established rights.

*Id.* ¶ 30. Although Onwenu's complaint could have been clearer about distinguishing Onwenu's different claims—as opposed to alleging one umbrella count of "deprivation of civil rights" as Onwenu did—this is not a case where the plaintiff is attempting to "reinterpret their complaint for the first time on appeal to raise a claim that they never before asserted." *Brent v. Wayne Cnty. Dep't of Human Servs.*, 901 F.3d 656, 690 (6th Cir. 2018). Moreover, Onwenu's intent to raise a retaliation claim is supported by the facts he chose to enter into the record: Onwenu discussed a West Bloomfield Township attorney's attempt to get him to sign a release of liability in his deposition; he entered the proposed release of liability in the record; and he provided evidence that he was actually issued traffic citations after he declined to release his claims.

Without expressing an opinion on the ultimate merits of Onwenu's retaliation claims, we conclude that he was entitled to notice and a reasoned disposition of those claims. *See* Fed. R. Civ. P. 56(f); *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (losing party must be "on notice

that she ha[s] to come forward with all of her evidence" before a court can sua sponte grant summary judgment on a claim). Accordingly, we vacate the district court's judgment to the extent it dismissed Onwenu's retaliation claims and remand for proceedings consistent with this opinion.

**IV.**

For the foregoing reasons, we **VACATE** the district court's judgment with respect to Onwenu's excessive force and retaliation claims and **REMAND** for further proceedings. We **AFFIRM** the district court's disposition of Onwenu's other claims.

KETHLEDGE, Circuit Judge, concurring in part and dissenting in part. I join all the court's thoughtful opinion except its reversal of the district court's grant of summary judgment as to the excessive-force claim against Officer Bacigal. To prevail on that claim, Onwenu must show that Bacigal ignored his complaints that the handcuffs were too tight. *See Miller v. Sanilac Cnty.*, 606 F.3d 240, 252 (6th Cir. 2010). No rational jury could make that finding here: the dashcam footage undisputedly shows that, as soon as Onwenu complained about the handcuffs, Bacigal climbed into the backseat of his vehicle and inspected them. (That Bacigal might have misjudged the cuffs' tightness—at night and with Onwenu wailing in his ear—is not a basis on which he could be liable. *See Ortiz ex. rel. Ortiz v. Kazimer*, 811 F.3d 848, 851 (6th Cir. 2016)). Bacigal also repeatedly assured Onwenu that the cuffs would come off in two or three minutes, when they arrived at the police station.

These undisputed facts make this case easily distinguishable from *Baynes v. Cleland*, 799 F.3d 600 (6th Cir. 2015), and *Morrison v. Board of Trustees of Green Township*, 583 F.3d 394 (6th Cir. 2009)—which themselves mark the outer bounds of officer liability in handcuffing cases. In each of those cases the plaintiff testified that the officer completely ignored his complaints; the video flatly precludes any such finding here.

I would therefore affirm the district court's judgment as to this claim as well.